**S. AMANDA MARSHALL, OSB #95347**
United States Attorney
District of Oregon
**CHARLES F. GORDER, JR., OSB #91287**
Assistant United States Attorney
charles.gorder@usdoj.gov
**DAVID L. ATKINSON, OSB #75021**
Assistant United States Attorney
david.atkinson@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 717-1117
Attorney for United States of America

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:10-CR-00506-KI |
| v. | **UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE (ECF NO. 212) AND TO RECONSIDER STRIKING LANGUAGE FROM INDICTMENT (ECF NO. 215)** |
| **HOSSEIN LAHIJI** and **NAJMEH VAHID,** a.k.a. **Najmeh Lahiji**, | |
| Defendants. | |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, through David L. Atkinson and Charles F. Gorder, Jr., Assistant United States Attorneys for the District of Oregon, hereby submit the United States' response to defendants' motions *in limine* (ECF No. 212) and to reconsider striking language from indictment (ECF No. 215):

Defendants have filed five Motions *in Limine* (ECF No. 212) numbered I through VI (there is no number IV).  Motions *in Limine* numbered III (A) – (C) substantially overlap with

**UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS
IN LIMINE AND TO RECONSIDER STRIKING LANGUAGE FROM INDICTMENT        Page 1**

and re-state defendants' Motion to Reconsider Striking Prejudicial, Inflammatory, Surplusage from Indictment (ECF 215).  The government's response to the overlapping motions *in limine* (motions III (A)-(C)) is addressed in the section of this memorandum containing our response to the motion for reconsideration.

I.      **Defendants' Motion** *in Limine* **I:  "Extraneous Acts":**

Defendants move to exclude evidence of marital infidelity, state law violations, immigration fraud, and the current charges pending against them in the Southern District of Texas.  The government does not intend to refer to such subjects in its case-in-chief.

As noted at pages 17-20 of the government's trial memorandum (ECF 196), however, defense counsel have suggested that part of the defense may lie in an allegation that this prosecution is the result of some kind of vendetta against the defendants.  Some of the exhibits on defendants' exhibit list suggest a similar approach.  For example, Defense Exhibit 360 is a compendium of letters to Immigration officials and Congress complaining about delays in granting defendant Vahid's pending naturalization petition.  Defense Exhibit 361 is a written complaint about an immigration official.  Certainly, if counsel is allowed to pursue such an approach or introduce such documents the defense will have opened the door to a response by the government which would make some such topics admissible.

Additionally, if the defendants should testify, they would be open to impeachment for specific acts of dishonesty under FRE 608(b) with some of these subjects.  Similarly, if the defendants should present character witnesses, such witnesses could be subject to cross-examinations about some of these topics.

## II.     Defendants' Motion in Limine II:  "Unauthenticated Evidence":

The government, of course, contends that each of the exhibits that it seeks to introduce into evidence is admissible under the Federal Rules of Evidence ("FRE") and relevant case law. The gravamen of defendants' challenge here seems to be that communications between Yasrebi and Iranshahi should not be admitted.  In their separately filed Joint Response to Government's Trial Documents (ECF 217), defense counsel recite FRE 403, 802, 901 and 1002, along with the constitutional right to confront witnesses, as the basis for their objections to the majority of the government's evidence.

The Ninth Circuit has repeatedly rejected the claim that co-conspirator hearsay violates the constitutional right to confront witnesses.  *United States v. Larson*, 460 F.3d 1200, 1213 (9th Cir. 2006), *aff'd en banc*, 495 F.3d 1094, 1099 n.4 (2007); *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005).  Statements made in furtherance of a conspiracy, whether a conspiracy is charged or uncharged, can be admitted against a co-conspirator defendant under FRE 801(d)(2)(E).  *United States v. Rrapi*, 175 F.3d 742, 750 (9th Cir. 1999); *United States v. Manning*, 56 F.3d. 1188, 1196-97 (9th Cir. 1995).  Here, the defendants provided far and away the most funds obtained by CF-US from any single source in the United States.  The co-conspirator exception applies to statements made in furtherance of any joint venture, regardless whether the object of the venture was legal or illegal.  *United States v. Layton*, 855 F.2d 1388, 1400 (9th Cir. 1988), *overruled on other grounds as recognized by Guam v. Ignacio*, 10 F.3d 608, 612 n. 2 (9th Cir.1993).  Thus, statements made in furtherance of the operations of CF-US and Refah Kudak, whether these activities violated the Iran Embargo or not, are admissible.

Yasrebi and Iranshahi, as well as CF-US and its affiliate, Refah Kudak in Iran, are alleged by the government to be coconspirators of the defendants in this case. See Redacted Indictment, at pp. 1-2, 5 (ECF 209). Entities such as CF-US and Refah Kudak operate through their employees and agents. *United States v. Hughes Aircraft Co., Inc.*, 20 F.3d 974 (9th Cir. 1994 (corporation liable for conspiracy due to acts of employees). See also *United States v. Ames Sintering Co.,* 927 F.2d 232, 236-37 (6th Cir. 1990); *United States v. Peters*, 732 F.2d 1004, 1008 (1st Cir. 1984); *United States v. Hartley*, 678 F.2d 961, 970 (11th Cir. 1982). Statements by employees of corporations engaged in a conspiracy can be admitted against other conspirators if made in furtherance of the conspiracy. *United States v. Continental Group, Inc.*, 603 F.2d 444, 460 (3rd Cir. 1979). Thus, statements by Yasrebi or Iranshahi, or by CF-US or Refah Kudak through Yasrebi and Iranshahi and other employees, whether in the form of telephone conversations, emails, letters, or other written documents can be admitted if they are relevant and in furtherance of the conspiracy (or joint venture). FRE 801(d)(2)(E).

It matters not whether a coconspirator, such as Iranshahi, has been indicted or, whether other Refah Kudak employees in Iran have not been so indicted. *United States v. Williams*, 989 F.2d 1061, 1067 (9th Cir. 1993). This was a wide-ranging, long-running, and international conspiracy spanning several times zones across the globe, which required Yasrebi and his confederates in Iran, Switzerland, and Dubai, to communicate primarily by telephone and email to keep the conspiracy moving forward. Statements made by co-conspirators to keep each other abreast of developments in the conspiracy are in furtherance of the conspiracy. *United States v. Yarbrough*, 852 F.2d 1522, 1535-36 (9th Cir. 1988).

Independent of the exception for co-conspirator hearsay, CF-US, Refah Kudak, and their employees acted as agents of the defendants. Specifically, the entities' employees assisted in transferring the defendants' funds to Iran, arranged for the purchase of real estate and certificates of deposits in banks, helped make payments on behalf of Ayatollah Shirazi, and facilitated defendants' claims of backdated tax deductions. As such, many of the government's exhibits involving communications keeping track of such purchases and investments are equally admissible as the statements of an opposing party's agent under FRE 801(d)(2)(D). *See United States v. Agne*, 214 F.3d 47, 54-55 (1st Cir. 2000) (conversations between corporate employee and outside party admitted against corporate officer).

The various items on the government's exhibit list to which the defendants object come from several sources generally summarized as (1) phone communications intercepted pursuant to court order, (2) documents seized pursuant to search warrants and court order from the offices of Child Foundation, at Yasrebi's residence and his business office, or at storage lockers under his control, and (3) documents seized from Iranshahi's email account at Yahoo!.com. They include internal accountings of Refah Kudak concerning the defendants' investments, letters to various Iranian officials concerning CF-US's or Refah Kudak's activities, handwritten records of wire transfers and check registers, magazines touting Refah Kudak's charitable works in Iran as well as the Refah Kudak financial statements, announcements of need for office space in Iran, and internal notes concerning the initial establishment of CF-US.

Telephone conversations in furtherance of a conspiracy have been long admitted to establish the existence of a conspiracy. *See, e.g., United States v. Pena-Espinoza*, 47 F.3d 356, 361 (9th Cir. 1995); *United States v. Lujan*, 936 F.2d 406, 410 (9th Cir. 1991). Records seized

from a conspirator's home have been admitted as kept in furtherance of the conspiracy. *United States v. Moran*, 493 F.3d 1002, 1010-11 (9th Cir. 2007) (records which kept track of company's fraudulent scheme found in computer at coconspirator's home admitted as made in furtherance of the conspiracy in tax fraud prosecution); *United States v. Gil*, 58 F.3d 1414, 1420 (9th Cir. 1995) (drug ledgers). Tape-recorded statements of future plans found in a conspirator's residence and written calendar notations have been similarly admitted. *United States v. Schmit*, 881 F.2d 608, 611-14 (1989). Records of wire transfers have been admitted where the name of a recipient on the records was found to be a statement in furtherance of a conspiracy. *United States v. Webster*, 623 F3d 901, 905 (9th Cir. 2010).

The defendants also make reference to FRE 901 and 1002 regarding the authenticity of the government's exhibits. The government need only make a prima facie showing of authenticity sufficient for a reasonable juror to believe the document or identification is authentic. *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000). The government's exhibits more than meet that threshold test.

The testimony of the government's case agent and some of the exhibits will provide background information concerning the establishment of CF-US and Refah Kudak, the identification of various persons such as coconspirators Yasrebi and Iranshahi who played major roles with the defendants in this case, and the preparation of the transcripts of recorded calls. Such background information is sufficiently authenticated by a knowledgeable case agent. *See, e.g., United States v. Decoud*, 456 F.3d 996, 1011-12 (9th Cir. 2006).

Phone records, self-identification, and familiarity with voices by the government's witnesses will establish that the phone conversations and emails involve the persons indicated,

meeting the low threshold for such authentication. *See, e.g., United States v. Plunk*, 153 F.3d 1011, 1022-23 (9th Cir. 1998). Letters and other documents can be sufficiently authenticated by circumstances surrounding their discovery, including location, and the information that they reveal which ties them to a particular author. *See, e.g., United States v. Whitworth*, 856 F.2d 1268, 1282-83 (9th Cir. 1988) (anonymous letters to FBI confessing to espionage). Each of the government's exhibits will have sufficient indications of authenticity to be admitted into evidence.

**III.    Defendants' Motions in Limine III (A) – (C): "Allegations of Terrorism, IEEPA legislative history, United State's (sic) designation of terrorists and Conspirators' relationship with Ayatollah Shirazi":**

See response to defendants' motion for reconsideration, below.

**IV.    Defendants' Motion in Limine V: "Plea negotiations":**

Counsel for the United States are aware of and will comply with Federal Rule of Evidence 410 (generally prohibiting admissibility of plea discussions; defining extremely limited exceptions unlikely to occur during trial).

**V.    Defendants' Motion in Limine VI: "United State (sic) Proposed Expert Witnesses":**

The defendants additionally lodge fairly unspecific objections to two of the government's proposed expert witnesses. No challenge to the two experts' actual qualifications or request for any *Daubert* hearing has been made with regard to the experts. The government contends that the proposed testimony of the two experts will be helpful to the jury in understanding the issues in this case.

Federal Rule of Evidence (FRE) 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in

**UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE AND TO RECONSIDER STRIKING LANGUAGE FROM INDICTMENT    Page 7**

> issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

All evidence admitted at trial must be relevant to a material fact and have "probative value." FRE 402, 403; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) (requiring that all expert testimony be relevant to the task at hand"). Expert testimony is relevant and probative when it helps the jury understand other evidence or assists the jury with its fact-finding function. Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 591-592 (requiring expert testimony to have a "connection to the pertinent inquiry").

Here, although most jurors may have heard of Iran they cannot be expected to be very familiar with the structure of its theocratic government, or Ayatollahs Khamenei, Shirazi and Mazaheri, all of whom will be referenced in the evidence in this case. Nor can they be expected to know what "khoms" or religious taxes in Iran are and the relatively unstructured way such khoms are often paid in cash. Mehdi Khalaji will explain these concepts and other matters as set forth in the government's previously filed summary of his testimony. Such testimony is not irrelevant or prejudicial.

Similarly, the jury is entitled to hear testimony from Andrew Sens, an OFAC employee, about the basic workings of the Iranian embargo, how one can apply for a license, the history of CF-US's license applications, and the fact that the defendants have never applied for any such license. Defendants object on the grounds of relevancy to testimony about the one CF-US license which was granted by OFAC, although the government notes that defendants have listed that very license on their exhibit list as Defense Exhibit 247.

Defendants' vague objections to the testimony of Khalaji and Sens should be overruled.

## VI. Defendants' Joint Motion to Reconsider Striking Prejudicial, Inflammatory, Surplusage from Indictment (ECF No. 215):

Last July, defendants filed numerous motions against the indictment which raise precisely the same issues as this motion. *See,* defendant Lahiji's Motion to Strike Prejudicial, Inflammatory, Surplusage from Indictment (ECF No. 107), defendant Vahid's Motion to Strike Surplusage from Indictment (ECF No. 96) and her supporting memorandum (ECF No. 96-1). With a few minor exceptions, the Motion for Reconsideration (ECF No. 215) cuts and pastes defendants' original motion (ECF No. 107) under a new title. Indeed, defendant's motion for reconsideration asks (at p. 8) that the Court strike the same 21 overt acts that the government agreed to redact from the Indictment months ago, back in August of 2012, in response to defendants' original motion.[1]

The only differences between defendants' original and current motions (other than a few formatting changes) are: (1) a statement that much additional discovery has been produced (at p. 1), without significant discussion of the nature of that evidence nor analysis of whether or how it supports reconsideration; (2) a contention that the challenged language is "extremely prejudicial," rather than "somewhat prejudicial" as the Court found in its original order (ECF 134 at pgs. 4-5); and (3) a claim that the government's evidence will fail to show that funds reached Ayatollah Shirazi, and that defendants actually do not follow Ayatollah Shirazi but rather a different Ayatollah (at p. 6).

---

[1] *See*, United States' Consolidated Response To Defendants' Motions Against The Indictment, ECF No. 120, p. 30 and Ex. 1 (agreeing to many redactions to indictment sought by defendants).

**UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE AND TO RECONSIDER STRIKING LANGUAGE FROM INDICTMENT      Page 9**

In response, the United States respectfully reasserts the arguments and legal authority contained in its original memorandum (ECF No. 107) at pp. 27-39. There, the government cited relevant case law addressing analogous factual scenarios supporting the proposition that information alleged in an indictment that is relevant and material to the charge should not be struck, even if it is somewhat prejudicial to a defendant. Defendants add nothing of substance that should predicate a change in the Court's ruling.

## VII.  Overt Acts.

As noted above, defendants' motion for reconsideration seeks to strike 21 overt acts to which they objected in their original motion (ECF 107, p. 7) and which the government agreed to redact months ago. The United States recently filed a Redacted Indictment (ECF 209) agreeing to redact an additional 13 overt acts which defendants sought to strike in their July 2012 motion (ECF 107, p. 7) and which they again moved to strike in their May, 2013 motion (ECF 215, p. 8). Thus, in filing the Redacted Indictment the United States agreed to remove a total of 34 overt acts that defendants specifically moved to strike on grounds that they were "irrelevant and immaterial" and/or "have nothing to do with defendants Lahiji and/or Vahid." *Id.*

At some point on or near May 15, 2013, without previous discussion or notice to the government, defendants sent a letter to the Court reversing field and objecting to the very redactions which they have twice asked to be stricken from the indictment (most recently in the previous week). A copy of this letter is attached as Exhibit 1.[2] To complete the record, an

---

[2]  The government's copy was transmitted without counsel's letterhead. We mention this not as an objection, but to merely explain why this exhibit may differ in format from whatever the Court may have received.

**UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE AND TO RECONSIDER STRIKING LANGUAGE FROM INDICTMENT      Page 10**

earlier letter written by government counsel explaining the redacted indictment is attached as Exhibit 2.

Having twice sought to strike this material from the indictment, defendants are estopped from now objecting to the government giving them what they have asked for. In their objection letter, defendants simply ignore the fact that their motions take a contradictory position. The government relied upon defendants' objection in filing the redacted indictment, fulfilling what it promised to do in its response to defendants' original motion to strike. *See*, United States' Consolidated Response to Motions Against the Indictment, (ECF 120) p. 28 at n 8 (agreeing to file a "redacted indictment" that would "not enable the reader to see the redacted material.").

Defendants' letter (Ex. 1) now objects to the removal from the indictment of the very material that they asked to have stricken as recently as May 8, 2013, and which the government redacted from the indictment at least in part at their request. They now apparently contend that certain overt acts are exculpatory and that the redaction of those acts would hamper their ability to present their defense. It is difficult to imagine how that could be true. If defendants offer legally admissible evidence on a point contained in a redacted paragraph, the fact that the paragraph is redacted will not render the evidence inadmissible in the defendant's case. The redactions do not impair one whit defendants' ability to present whatever relevant, admissible evidence they choose.

Defendants also complain that "[t]he government should not be able to pick and choose at will what portions of the grand jury's indictment should be presented to the jury." *Id.* But the United States is the plaintiff. It *does* have the right to choose which portions of the indictment it

**UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS
IN LIMINE AND TO RECONSIDER STRIKING LANGUAGE FROM INDICTMENT     Page 11**

will present and which it will not pursue. This is particularly true when the government *narrows* the charges – and *acts at defendants' specific request*.

The government's redactions will save the Court and parties many hours – indeed, days -- of trial time. In the judgment of government counsel, the redactions avoid the additional expenditure of precious resources in the pursuit of less significant allegations for which defendants are vicariously, rather than directly, liable. The fundamental architecture of the indictment remains unchanged. Defendants' letter objection should be overruled.

*Paragraphs 16 and 18 of the "Manner and Means" Section of the indictment.* Paragraphs 16 and 18 allege *inter alia* transactions with Iran's Ayatollah Makarem Shirazi (¶16) and those defendants' coconspirators Yasrebi and Iranshahi deceived auditors and tax preparers (¶18). Defendants' motion for reconsideration (ECF 215 at p. 7) contains a word-for-word reprint of their original motion on these points (ECF 107 at p. 6).

The only arguable addition to their earlier argument is their claim in the current motion (at p. 6) that the government will be unable to prove that "any money reached this Ayatollah or that either defendant intended that any funds reach said ayatollah." Defendants further argue that "there is no evidence that the defendants followed Ayatollah Shirazi, and in fact they follow a different ayatollah." *Id.*

Regardless which ayatollah defendants follow, they understate the evidence regarding Ayatollah Shirazi. For example, coconspirator Yasrebi sent an email to defendant Vahid in 2005 containing an attachment with a representation that "last year, his Holiness, Ayatollah Makarem Shirazi, agreed that a sum of 50% of the Khoms be used through the Bonyad e Koodak's internal system for indigent families and the remaining 50%, at his discretion, be used in the path of

helping the needy sadats and, in one instant, to help pay for a cultural center under construction in Shiraz. Fortunately, this procedure has been implemented." (Tr. Ex. 9). In March of 2006, defendant Lahiji sent a handwritten letter to Yasrebi indicating that he had sent a check for Khoms due, and requesting a receipt. (Tr. Ex. 118). An internal email accounting communication between coconspirators Yasrebi and Iranshahi in May 2006 (Tr. Ex. 68) indicated that $250,000 of defendants' money was used "[f]or the purpose of Paying Khoms to Ayatollah Makarem." A response in September 2006 stated that the correct sum was "200,000 dollars not 250,000 dollars he [defendant Lahiji] has paid for Khoms in the past and you gave that to Ayatullah MAKAREM." (Tr. Ex. 69). During an intercepted phone conversation in November 2006 between defendant Vahid and Yasrebi, there was a discussion about Ms. Vahid wanting a receipt for $200,000 which "Doctor [Lahiji] gave for his khoms which we [Child Foundation] gave to Mr. Makarem." (Tr. Ex. 80). Shortly thereafter, defendant Vahid sent a fax to coconspirators Yasrebi and Iranshahi confirming "$200,000: 2006 khoms (pending receipt)" and "receipt pending for $200,000 khoms" as of 11/27/2006. (Tr. Ex. 81). During an intercepted phone conversation in January 2007, Iranshahi requested that Yasrebi "send 20 now dear Mehrdad, and also 300 for us, because I have not yet paid Mr. Lahiji's [PH] Khoms [PH] which I had to." (Tr. Ex. 89). During an intercepted phone conversation between coconspirator Yasrebi and a third party in March 2007 (Tr. Ex. 97), Yasrebi stated that Child Foundation had twice given large sums provided by two "Muslims in America" to "Makarem Shirazi" who in turn "gave 40-50 percent of it to us and the other 50 percent, we gave to people he wants us to [asks us to]." (Tr. Ex. 92). Additional evidence too lengthy to detail here further supports the conclusion that defendants conspired to transmit funds through Child Foundation to Ayatollah

Shirazi. This conduct was an essential part of the conspiracy, and there is simply no lawful basis to strike it from the indictment.

With regard to paragraph 18 regarding misrepresentations by Yasrebi and Iranshahi to Child Foundation's auditors, the United States stands by its Consolidated Response (ECF 120, pgs. 34-35) filed last August regarding the principles of vicarious liability as applied to conspirators. Defendants allege absolutely nothing to counter this. And their position in the Motion for Reconsideration (ECF 215, p. 7) that they want this stricken from the indictment appears to be flatly inconsistent with the position taken in their letter objection to the filing of the redacted indictment (Ex. 1, p. 1, alleging that defendants were "victimized by the conspiratorial and secret actions" of Yasrebi and Iranshahi). This serves to further contort the appropriate analysis here. Paragraph 18 should not be stricken.

*Introductory paragraphs 8, 9 and 10.* Defendants' Motion for Reconsideration also restates almost verbatim their earlier requests that sentences, or segments of sentences, be stricken from the indictment in paragraphs 8, 9 and 10. In paragraph 8, the indictment provides background and contextual information about IEEPA and the Iranian embargo. The government's original response (ECF 120, p. 42) explained that "[i]t is inescapable that the provisions of the relevant Presidential Orders and Iranian Transactions Regulations ('ITRs') will constitute a part of the trial. A trier of fact is entitled to know that an embargo under IEEPA cannot be arbitrarily imposed, but rather is governed by statutory standards and principles defined by Congress. A trier of fact would otherwise be left to view the facts of this case in a vacuum, without the necessary background evidence and context. Defendants overstate the potential prejudice to their defense." *Id.* The Court ruled that the language provided appropriate

context for the embargo. (ECF 134, p. 5). Defendants cite nothing of substance to predicate reconsideration or reversal.

With regard to paragraph 9, defendants contend that the mention of three of six provisions of the Iranian embargo are unnecessary and "create an atmosphere of fear and prejudice with respect to all transactions with the country of Iran." Def's. mot. for reconsideration (ECF 215), p. 5. As predicted in the government's original response, both parties will call expert witnesses regarding the embargo. (ECF 120, p. 37-38). While it is true that the redacted indictment de-emphasizes the portion of its case involving one of the regulations defendants seek to strike -- the conspirators' engagement in embargo violations involving food commodities -- it remains a part of the indictment. It is difficult to imagine how defendants are prejudiced by simple reference to the provision of regulations that will inevitably be a part of the case. There is no basis for the Court to reconsider its original ruling.

Dated this 21st day of May, 2013.

        Respectfully submitted,

        S. AMANDA MARSHALL
        United States Attorney

        */s/ David L. Atkinson*
        **DAVID L. ATKINSON, OSB #75021**
        Assistant United States Attorney

        */s/ Charles F. Gorder, Jr.*
        **CHARLES F. GORDER, JR., OSB #91287**
        Assistant United States Attorney